UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THOMAS F. FINNEGAN,                                    CIV. NO. 15-204 (MJD/JSM)
MARY E. FINNEGAN,

       Plaintiffs,                              **REPORT AND RECOMMENDATION**

v.

SUNTRUST MORTGAGE,
FEDERAL NATIONAL MORTGAGE ASSOCIATION,

       Defendants.

The above matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 11].   Jonathan D.  Miller, Esq. appeared on plaintiffs' behalf. Susan Dickel Minsberg, Esq. appeared on defendants' behalf.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), and Local Rule 72.1(c).  [Docket No. 17].

## I.  BACKGROUND

This matter has a lengthy history involving a prior lawsuit.[1]   In 2007, plaintiffs Thomas and Mary Finnegan fell behind in their mortgage payments to their lender

---

[1]      The Court has relied in part, on the Findings of Fact ("Findings of Fact"), Conclusions of Law and Order ("Conclusions of Law") and the Order Amending Findings of Fact and Conclusions of Law ("Amended FFCL") issued by Hennepin County District Court Judge Thomas Fraser in connection with plaintiffs' state court lawsuit against Danny Solie.  See Defendants' Memorandum in Support of Motion to Dismiss ("Defs.' Mem."), Exhibits A, B [Docket No. 15-1].  These pleadings are public documents embraced by the pleadings in the instant case and the Court may consider them without converting defendants' Motion to Dismiss to a Motion for Summary Judgment.  See Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n.4 (8th Cir. 2003) (noting that the court may consider materials necessarily embraced by the pleadings when considering a motion to dismiss); Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007)

Interbank on their residential property located in Eden Prairie, Minnesota ("Property"). Amended Complaint, ¶ 1 [Docket No. 4]; Findings of Fact, ¶¶ 1, 2. In September, 2007, Interbank commenced a foreclosure by advertisement against the Property. Amended Complaint, ¶ 11. Before the foreclosure sale took place,[2] Danny Solie, a stranger to plaintiffs, offered to purchase the Property and sell it back to them pursuant to a lease-to-own arrangement. Id., ¶¶ 4, 12, 13; Findings of Fact, ¶¶ 3, 13. Solie had closed on the purchase of other foreclosure property. Amended Complaint, ¶ 17; Findings of Fact, ¶ 4. On October 6, 2007, plaintiffs and Solie entered into a Purchase Agreement, and Solie gave them a Notice of Right to Cancel, which allowed plaintiffs to cancel the agreement through midnight on October 11, 2007. Amended Complaint, ¶ 15; Findings of Fact, ¶¶ 6, 8. A closing took place on October 15, 2007, at which time plaintiffs provided Solie with a warranty deed to the Property in reliance on Solie's promise to pay the mortgage and reconvey the Property to plaintiffs. Amended Complaint, ¶ 14; Findings of Fact, ¶ 9. Also on October 15, 2007, plaintiffs entered into a lease and purchase agreement with Solie for the repurchase of the Property. Amended Complaint, ¶ 19; Findings of Fact, ¶¶ 10, 12. The warranty deed was recorded on October 19, 2007, which plaintiffs alleged was within the 5-day cancellation period

---

("Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion.") (quotation omitted).

[2] It is not known from the Amended Complaint or the Findings of Fact of the state court if a foreclosure sale ever took place. In any event, even if it did, the six-month period of redemption period clearly had not expired by the time plaintiffs conveyed the warranty deed to Solie on October 15, 2007.

under Minn. Stat. § 325.17.[3] Amended Complaint, ¶ 16; Findings of Fact, ¶ 15. Before the closing, Solie failed to determine if plaintiffs could afford to make the lease payments or repurchase the Property. Amended Complaint, ¶ 18; Findings of Fact, ¶ 13. At the closing on October 15, 2007, Solie gave a mortgage to SunTrust Mortgage to secure the purchase of the Property, which was recorded against the Property on October 19, 2007, which plaintiffs alleged was within the 5-day cancellation period and within five days of plaintiffs executing the instrument of conveyance. Amended Complaint, ¶ 21; Findings of Fact, ¶ 14.

Subsequent to the closing, plaintiffs paid Solie $2,800 per month in rent, but Solie failed to pay SunTrust and SunTrust commenced foreclosure proceedings in or about December, 2009. Amended Complaint, ¶¶ 24-26; Findings of Fact, ¶¶ 16, 17. SunTrust purchased the Property at a sheriff's foreclosure sale on April 29, 2010. Amended Complaint, ¶ 26; Findings of Fact, ¶ 20. Defendant Federal National Mortgage Association ("Fannie Mae") obtained an assignment of the Sheriff's Certificate of Sale dated April 30, 2010, which was recorded. Amended Complaint, ¶ 22.

Plaintiffs sued Solie and SunTrust in state court, asserting claims under Minnesota Chapter 325N[4]; Minn. Stat. § 325F.6 (the Minnesota Consumer Fraud Act),

---

[3]    There is no Minn. Stat. § 325.17. The Court believes that plaintiffs were referring to Minn. Stat. § 325N.13 or Minn. Stat. § 325N.17(f).

[4]    Minnesota Chapter 325N was enacted in 2004 to regulate foreclosure reconveyance transactions. Erickson v. Wells Fargo Bank, N.A., Civ. No. 11-3123 (MJD/FLN), 2012 WL 1593204, at *2 (D. Minn. Apr. 19, 2012) (describing Minn. Stat. § 325N); Jones v. Rees-Max, LLC, (MJD/AJB), 514 F.Supp.2d 1139, 1147 (D. Minn. 2007) ("Chapter 325N of Minnesota State statutes regulates mortgage foreclosures as part of an overall consumer protection scheme. This Chapter is divided into two distinct sections: (1) §§ 325N.01 through 325N.09 which regulate 'foreclosure consultants', and (2) §§ 325N.10 through 325N.18 which regulate 'foreclosure purchasers.'").

and the Truth in Lending Act.  Amended Complaint, ¶ 31.  Plaintiffs sought cancellation of their conveyances, rescission and a declaratory judgment adverse to Solie and SunTrust.  Id.  SunTrust removed the suit to Federal District Court and then plaintiffs added Fannie Mae as a defendant in the action.  Id., ¶ 32.  See Finnegan v. Solie et. al. ("Finnegan I"), Civ. No. 10-4553 (DWF/JSM), Notice of Removal [Docket No. 1]; Amended Complaint [Docket No. 2].  SunTrust and Fannie Mae moved to dismiss this Complaint.  Amended Complaint, ¶ 34; Finnegan I, Docket No. 3.  The District Court dismissed the Amended Complaint against SunTrust and Fannie Mae without prejudice and remanded the claims against Solie to the state court, based on a stipulation of the parties.  Amended Complaint, ¶¶ 34, 35, 36;  34; Finnegan I, Docket Nos. 15, 18.

A bench trial was held in the state court action and the court issued its Findings of Fact, Conclusions of Law and Order on July 21, 2014.  Amended Complaint, ¶ 44; Def. Mem., Ex. A.  The state court found that Solie violated Minn. Stat. § 325N.12, because he did not provide to plaintiffs a single document reflecting the entire agreement between the parties to sell the Property to Solie, to lease the Property to plaintiffs and to repurchase the Property from Solie.  Conclusions of Law, ¶¶ 6, 7; see Jones v. Rees-Max, LLC, 514 F. Supp. 2d 1139, 1149 (D. Minn. 2007) ("Contrary to Defendants' assertions of substantial compliance, the Court finds that Defendants did not comply with sections 325N.11 and 325N.12 in many respects.  Section 325N.12 requires a written contract that contains the entire agreement of the parties before the execution of any instrument of conveyance.  The Court has reviewed the record and finds no contract contains the entire agreement of the parties.  There are a series of documents-a purchase agreement, lease, contract for deed, pre-negotiation disclosure-

but not one document that fully explains the entire agreement.") (emphasis in original). The state court also found that Solie violated Minn. Stat. § 325N.17(a)(1) in that he failed to establish that he had obtained any documentation from plaintiffs showing that they could make the lease payments and repurchase the Property. Conclusions of Law, ¶¶ 8-10; see Jones, 514 F. Supp. 2d at 1149 ("A foreclosure purchaser is prohibited from attempting to enter into a foreclosure reconveyance unless they can demonstrate they have verified that the foreclosed homeowner has a reasonable ability to pay for the subsequent conveyance of an interest back to them. Minn. Stat. § 325N.17(a)(1). In addition, there is a rebuttable presumption that a foreclosure purchaser has failed to do this if the purchaser has not obtained documents other than a statement from the homeowner of assets liabilities and income. Id."). The state court concluded that Solie had violated Minnesota Chapter 325N and that plaintiffs were entitled to damages, but declined to cancel the agreements between plaintiffs and Solie on grounds that a cancellation could affect the rights of SunTrust and Fannie Mae. Amended Complaint, ¶ 45; Conclusions of Law, ¶¶ 19, 20.

Plaintiffs moved for reconsideration of the state court's decision, based on their representations that an amended order would not, in itself, affect SunTrust's or Fannie Mae's interests in the Property, and that plaintiffs would commence a new action against them to quiet title "and/or determine the status of Defendants' mortgage against the Property." Amended Complaint, ¶ 46.

The state court issued its amended order on September 3, 2014. Id., ¶ 47; Def. Mem., Ex. B (Amended FFCL). Based on Solie's violation of Minn. Stat. § 325N.12 and pursuant to Minn. Stat. § 325N.13, the state court cancelled the purchase agreement,

the warranty deed, the lease and the repurchase agreement. Amended Complaint, ¶ 48; Amended FFCL, ¶ 2.

The amendments by the state court relevant to the instant action were as follows.

Conclusion of Law ¶ 17[5] was amended to state:

> Either SunTrust or . . . [Fannie Mae] may hold a mortgage on the Property in good faith and Plaintiffs' ownership of the Property would, therefore, be subject to it.

Amended FFCL, ¶ 1(a).

Conclusion of Law ¶ 19[6] was amended to state:

> The statute allows for cancellation of the agreements between plaintiffs and [Solie] as a result of [Solie's] violations of sections 325N.10 to 325N.17. The Property, however, must be restored to Plaintiffs without affecting the rights of good faith purchasers.

Id., ¶1(b).

---

[5]    Conclusion of Law ¶ 17 originally stated:

> SunTrust held a mortgage on the Property in good faith and Plaintiffs do not have standing to rescind the mortgage that SunTrust made to Defendant. Esty v. Cummings, 83 N.W. 420 (Minn. 1990) ("[plaintiff] clothed [the third party] with title to the property, empowered him to make a loan thereon for her benefit, and cannot now be heard to dispute that which her conduct induced, and was intended to bring about.").

Def. Mem., Ex. A, Conclusions of Law, ¶ 17.

[6]    Conclusion of Law ¶ 19 originally stated:

> Cancellation of the agreements between Plaintiffs and Defendant is not appropriate. The Property cannot be restored to Plaintiffs without affecting the rights of at least two good faith purchasers, SunTrust Mortgage and the current owner of the Property.

Defs.' Mem., Ex. A, Conclusions of Law, ¶ 19.

The court further stated:

> 3.      By this Order, the Court does not purport to cancel, affect or otherwise purport or attempt to affect the mortgage of SunTrust Mortgage . . . and/or Fannie Mae against the Property.  Accordingly, Plaintiffs' interest in the Property is **SUBJECT TO** the mortgage of SunTrust and/or Fannie Mae.
>
> 4.      The status and disposition of the mortgage of SunTrust and/or Fannie Mae against the Property is not addressed in this Order.

Id., ¶¶ 3, 4. (emphasis in original).

The state court restored plaintiffs' ownership interest in the Property and awarded plaintiffs a judgment against Solie in the amount of $44,499.88 for their attorneys' fees and costs incurred in the state action.  Amended Complaint, ¶¶ 49, 50; Amended FFCL, ¶¶ 1(c), 6.

On December 31, 2014, plaintiffs commenced the instant action in state district court against SunTrust and Fannie Mae.  Notice of Removal, ¶ 1 [Docket No. 1]. Defendants removed the suit to Federal District Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  Id., ¶¶ 5-9.  On February 2, 2015, plaintiffs served and filed an Amended Complaint.  In lieu of answering, defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[7]

_____

[7]      Fannie Mae commenced an eviction action in state housing court to evict plaintiffs from the Property.  Amended Complaint, ¶ 37.  The eviction action was stayed in 2010, and ultimately dismissed by Fannie Mae.  Id., ¶¶ 38, 40.  According to plaintiffs, in December, 2014, Fannie Mae attempted to re-institute eviction proceedings, but plaintiffs notified the state housing court that they would be bringing a quiet title action to address ownership of the Property, and as a result, the state housing court would not re-open the eviction proceeding.  Id., ¶¶ 41-43.  It is undisputed that plaintiffs have resided in the Property since approximately January, 2010, without making any payments.  Defs.' Mem., p. 11; Plaintiffs' Memorandum in Opposition ("Pls.' Opp. Mem."), p. 27 [Docket No. 18].

The Amended Complaint alleged on information and belief that "SunTrust and/or Fannie Mae knew, or should have known, about the purchase transaction, lease and re-sale of the Property between Solie and the Finnegans;" and "had actual, constructive or implied notice of facts regarding Mr. Solie's purchase and reconveyance of the Property from and to Plaintiffs in violation of Minn. Stat. Ch. 325N (which is included in the Minnesota Homeowner's Equity Protections Act 'MHOEPA')." Amended Complaint, ¶¶ 23, 28. Specifically, plaintiffs alleged: "Defendants' actual, constructive or implied notice of facts regarding Mr. Solie's purchase and reconveyance of the Property from and to Plaintiffs in violation of Minn. Stat. § 325N, include[d] but are not limited to the following:" (a) in connection with the providing financing to Solie and obtaining a mortgage against the Property, defendants knew that plaintiffs had possession and occupancy of the Property and would remain in possession beyond the closing of their sale of the Property to Solie; (b) knew that plaintiffs had a right to remain in possession after the sale to Solie; (c) knew that plaintiffs' interest in the Property was in foreclosure and plaintiffs were in the redemption period when they sold the Property to Solie;[8] (d) in the process of financing and obtaining a mortgage against the Property, defendants obtained a lender's policy of title insurance and the title commitment or title policy would have revealed plaintiffs' interest in the Property; (e) in the process of financing and obtaining a mortgage against the Property, defendants obtained a lender's policy of title insurance and the title commitment or title policy would have identified plaintiffs as

---

[8]  Again, the Court notes that neither the Amended Complaint nor the Findings of Fact of the state court ever stated that the foreclosure sale took place before plaintiffs entered into a purchase agreement to sell the Property to Solie or conveyed the Property to him via warranty deed.  See n. 2, supra.  Consequently, the Court has no idea if the redemption period had commenced at the time plaintiffs entered into the purchase agreement.

tenants and others in possession of the property; (f) in the process of financing and obtaining a mortgage against the Property, defendants knew or should have known of the foreclosure of plaintiffs' interest in the Property, the existence of a purchase agreement executed during the redemption period of that foreclosure, and plaintiffs execution of a deed during the foreclosure redemption period; (g) in the process of financing and obtaining a mortgage against the Property, defendants knew or should have known that there was information on Solie's loan application or other documentation submitted by him to defendants demonstrating that he would not be in possession of the Property or raising questions regarding whether Solie had violated Minnesota Chapter 325N; (h) in the process of financing and obtaining a mortgage against the Property, defendants knew or should have known about Solie's other purchases of real property in foreclosure; and (i) defendants knew or should have had knowledge that Solie acquired the Property in violation of Minnesota Chapter 325N. <u>Id.</u>, ¶ 29.

Count I of the Amended Complaint is entitled "Defendants' Violation of Minn. Stat. Ch. 325N." In this Count, plaintiffs claimed that Solie violated Minnesota Chapter 325N in connection with his purchase and reconveyance of the Property as determined by the state court. <u>Id.</u>, ¶ 56. Plaintiffs then alleged that defendants had "actual, constructive or implied notice" that Solie violated Minnesota Chapter 325N and knew of plaintiffs' "outstanding rights" in the Property, and as a result, were not bona fide purchasers of the Property by virtue of their financing of Solie's purchase of the Property from plaintiffs. <u>Id.</u>, ¶¶ 57-59. Plaintiffs also asserted that defendants' claimed rights to the Property should be "deemed cancelled" pursuant to Minnesota Chapter

325N "and MHOEPA,"[9] including Minn. Stat. § 325N.13,[10] and because defendants were not good faith purchasers for value pursuant to Minn. Stat. § 325N.18, subd. 3.[11] Id., ¶¶ 60, 61.

Count II alleged quiet title. Id., ¶¶ 63-66. Plaintiffs sought a determination that defendants were not entitled to a mortgage or security interest in the Property because of their "actual, implied and/or constructive knowledge" of Solie's prohibited transactions and plaintiffs "inconsistent outstanding rights" to the Property. Id., ¶ 63. Alternatively, plaintiffs asserted that they were entitled to a declaration or findings that defendants'

---

[9]     The Court does not understand why plaintiffs have distinguished between Minnesota Chapter 325N and MHOEPA. They are one and the same. See n. 16, infra.

[10]     The relevant provisions of Minn. Stat. § 325N.13 provide:

> (a)     In addition to any other right of rescission, the foreclosed homeowner has the right to cancel any contract with a foreclosure purchaser until midnight of the fifth business day following the day on which the foreclosed homeowner signs a contract that complies with sections 325N.10 to 325N.15 or until 8:00 a.m. on the last day of the period during which the foreclosed homeowner has a right of redemption, whichever occurs first.
>
> ***
>
> (c)     A notice of cancellation given by the foreclosed homeowner need not take the particular form as provided with the contract.

[11]     Minn. § 325N.18, subd. 3 provides in relevant part:

> The remedies provided in this section are cumulative and do not restrict any remedy that is otherwise available. The provisions of sections 325N.10 to 325N.18 are not exclusive and are in addition to any other requirements, rights, remedies, and penalties provided by law. No action under this section shall affect the rights in the foreclosed property held by a good faith purchaser for value under sections 507.34, 508.48, 508A.48, or other applicable law.

lien interest in the Property was foreclosed by SunTrust, but that the foreclosure was stayed pending resolution of plaintiffs' suit against Solie and that plaintiffs should be permitted to redeem their interest in the Property for the amount bid by SunTrust in 2010 for 180 days after entry of an Order by the court; or that they were entitled to a declaration or findings that defendants' lien interest in the Property was not properly foreclosed in 2010 and foreclosure must be commenced, subject to plaintiffs' right of redemption. Id., ¶¶ 64, 65. Further, plaintiffs alleged that to the extent the mortgage in favor of SunTrust and Fannie Mae was rescinded, that the mortgage be deemed void or that SunTrust or Fannie Mae be required to deliver a satisfaction of mortgage. Id., ¶ 66. Plaintiffs also sought an order enjoining defendants from commencing an eviction action. Id., ¶ 67.

Count III asserted declaratory judgment and sought a determination of the status and disposition of the defendants' mortgage against the Property based on whether defendants had actual, implied or constructive notice of the Minnesota Chapter 325N transaction between Solie and plaintiffs, plaintiffs' "inconsistent outstanding rights" to the Property, the validity of the foreclosure of SunTrust's mortgage against the Property, and plaintiffs' right to redeem and the terms of their redemption under any foreclosure proceeding commenced by defendants. Id., ¶ 71.

Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6). Defendants argued that Count I must be dismissed because Minnesota Chapter 325N does not provide a standalone cause of action against lenders. Defs.' Mem., pp. 6-8. Defendants submitted that the statute regulates the conduct of foreclosure purchasers and consultants and specifically provides that "a foreclosure purchaser does not include

. . . a federal or state chartered bank, savings bank, thrift or credit union." <u>Id.</u>, p. 7 (citing Minn. Stat. § 325N.10, subd. 4(ii)). The Amended Complaint alleged only that Solie violated Minnesota Chapter 325N, but then invoked the statute to seek cancellation of defendants' interests in the Property. <u>Id.</u> Defendants contended that the Court cannot read that remedy into the statute. <u>Id.</u> (citing <u>Transamerica Mortg. Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 19 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

Further, Minn. Stat. § 325N.18, subd. 3 refers to enforcement of Minn. Stat. §§ 325N.10 through 325N.18, and states that "[n]o action under this section shall affect the rights in the foreclosed property held by a good faith purchaser for value." According to defendants, it did not matter whether defendants were good faith purchasers because the statute simply does not apply to them. <u>Id.</u>, pp. 7-8.

Alternatively, even if the Court concluded that Minnesota Chapter 325N created a cause of action against them based on an allegation that they were not good faith purchasers, the allegations in the Amended Complaint relating to defendants' alleged knowledge of the transactions between plaintiffs and Solie were premised solely on "information and belief" and were without factual support. <u>Id.</u>, pp. 8-9. For example, even if defendants knew that plaintiffs would retain possession of the Property beyond the closing of the sale to Solie, (Amended Complaint, ¶ 29(a)), that fact was not a reasonable basis to conclude that the defendants conspired with Solie to violate Minnesota Chapter 325N. <u>Id.</u>, p. 9. In support, defendants cited the unpublished decision, <u>Stella v. Wells Fargo Bank, N.A.</u>, 2012 WL 3553123, at *7 (Minn. Ct. App.

Aug. 20, 2012). In that case, the Minnesota Court of Appeals noted that alleged anomalies in closing documents would not have put a mortgage lender on notice to inquire further, and stated "[f]or example, documents indicating that [alleged foreclosure purchaser] did not intend to occupy the property are not unusual . . . respondent's possession of the property would raise no red flags because a seller would ordinarily remain in possession of the property up to and often after the closing date." Id., p. 10 (quoting Stella, 2012 WL 3553123, at *7).

As to Count II, quiet title, defendants asserted that this was an equitable remedy that should be barred for two reasons. First, plaintiffs had an adequate remedy at law, which they exercised through their action against Solie and in which the court cancelled the purchase agreement, warranty deed, lease and repurchase agreement, and awarded them $44,499.48 against Solie. Id., p. 11. Second, because plaintiffs had unclean hands – they had defaulted on their mortgage to Interbank and had been living in the Property without making any payments since 2010 – the quiet title claim failed. Id., p. 12.

Regarding Count III, seeking a declaratory judgment, defendants argued that declaratory judgment is a remedy, not a cause of action. Id., p. 13. Given the substantive claims in Counts I and II failed, the Amended Complaint failed to state a claim for declaratory judgment. Id.

Defendants anticipated that plaintiffs might argue that under the recently decided Minnesota Supreme Court decision, Graves v. Wayman, 859 N.W.2d 791 (Minn.

2015),[12] that SunTrust's mortgage was void as a result of the cancellation of the warranty deed. Defs.' Mem., pp. 13-16. According to defendants, in <u>Graves</u>, a homeowner attempted to timely cancel a purchase agreement associated with a foreclosure reconveyance transaction. <u>Id.</u>, p. 14. The defendant, a foreclosure purchaser under Minnesota Chapter 325N, refused to honor the cancellation and granted a mortgage to the property to a bank. <u>Id.</u> The Minnesota Supreme Court held "[w]hen a homeowner timely cancels a foreclosure reconveyance under Minn. Stat. § 325N.13 (2014), any deed executed by the homeowner before the cancellation is rendered void." <u>Id.</u>, p. 14 (quoting <u>Graves</u>, 859 N.W.2d at 792).[13] Because a void deed does not transfer title, the mortgagee does not take any interest based on such a deed, even if the mortgagee can prove that it was a bona fide purchaser. <u>Id.</u> (citing <u>Id.</u>).

Defendants contended that plaintiffs delivered the warranty deed to Solie on October 15, 2007, four days after expiration of the cancellation period on October 11, 2007, and did not attempt to cancel the foreclosure reconveyance transaction with Solie during the cancellation period. As a result, the warranty deed was properly delivered by the plaintiffs to Solie and Solie properly granted a mortgage to SunTrust. Consequently, <u>Graves</u> does not dictate that SunTrust's mortgage was void. <u>Id.</u>, p. 15.

Defendants also asserted that the instant case was distinguishable from <u>Graves</u> in that the state court in <u>Finnegan I</u> "expressly held" that "Plaintiffs' interest in the Property is **SUBJECT TO** the mortgage of SunTrust and/or Fannie Mae," and as

---

[12]     Plaintiffs filed their Amended Complaint on February 5, 2015. <u>Graves</u> was issued on February 25, 2015.

[13]     This language is contained in the court's syllabus.

plaintiffs did not appeal that decision, they cannot now attempt to have the Federal District Court invalidate defendants' interest in the Property.[14] Id., p. 15.

Finally, defendants contended that although the Minnesota Supreme Court remanded Graves to determine whether the purported mortgagee had an interest in the property based on equitable principles, here, defendants had invoked the doctrine of unclean hands to bar plaintiffs' quiet title claims. Id., p. 16. In other words, any equitable considerations were foreclosed by plaintiffs' unclean hands.

Plaintiffs responded that they timely cancelled the transaction with Solie and as a result, Solie had no interest in the Property when he conveyed a security interest to SunTrust. Pls.' Opp. Mem., p. 19. Plaintiffs' argument was based on Minn. Stat. § 325N.13, which as stated previously, provides:

> In addition to any other right of rescission, the foreclosed homeowner has the right to cancel any contract with a foreclosure purchaser until midnight of the fifth business day following the day on which the foreclosed homeowner signs a contract that complies with sections 325N.10 to 325N.15 or until 8:00 a.m. on the last day of the period during which the foreclosed homeowner has a right of redemption, whichever occurs first.

Minn. Stat. § 325N.13(a).

---

[14] At the motion hearing, defendants' counsel argued in the alternative that the state court's amended conclusions of law were "conflicting" or "unclear." Either argument is meritless. All the state court's Amended Conclusion of Law stated was that SunTrust or Fannie Mae "may hold a mortgage on the Property in good faith and Plaintiffs' ownership of the Property would, therefore, be subject to it." Amended FFCL, ¶ 1(a) (amending Conclusions of Law, ¶ 17) (emphasis added). Further, the state court explicitly stated that "[t]he status and disposition of the entry of the mortgage of SunTrust and/or Fannie Mae against the Property is not addressed by this Order." Id., ¶ 4 (emphasis added). The Amended Findings of Fact and Conclusions of Law made it crystal clear that the state court was not deciding defendants' interest in the Property, nor could it since defendants were not parties to that lawsuit.

According to plaintiffs, defendants were wrong when they argued that plaintiffs delivered their warranty deed to Solie after the cancellation period had expired. Pls.' Mem., p 19. To the contrary, given the state court's finding that Solie had never delivered a contract to plaintiffs that complied with Minnesota Chapter 325N (and therefore, the first provision of Minn. Stat. § 325N.13 – cancellation within five days after execution of the purchase agreement – was not triggered), and as plaintiffs had "assert[ed] [a] notice of cancellation" in their state court complaint before the expiration of the redemption period following SunTrust's foreclosure, they "could and did cancel the transaction within the cancellation period provided by Minn. Stat. § 325N.13." Id., p. 19.[15]

Plaintiffs argued that <u>Graves</u> dictated that a deed that has been rendered void by a timely cancellation under Minn. Stat. § 325N.13 does not transfer title and the mortgagee does not take any interest based on the void deed, even if the mortgagee is a bona fide purchaser. Id., p. 18. Thus, under <u>Graves</u>, Solie had no interest in the Property to convey to SunTrust, and defendants' alleged mortgage interest against the Property was void. Id., p. 19.

Plaintiffs also rejected defendants' assertion that their claims regarding SunTrust's knowledge of the Solie transaction should be dismissed because the allegations were speculative and lacking in factual support. Plaintiffs insisted that they

---

[15]    At the motion hearing, plaintiffs' counsel argued that plaintiffs timely cancelled the transaction with Solie. In their brief, plaintiffs stated that they "<u>could and did</u> cancel the transaction within the cancellation period provided for under Minn. Stat. § 325N.13 . . .[as] determined by Judge Fraser in his Amended Order." Pls.' Mem., p. 19. (emphasis in original). Nowhere did the state court determine that plaintiffs timely cancelled the transactions, much less canceled them through the filing of the state court complaint. Indeed, plaintiffs did not cancel the transactions; the state court did. <u>See</u> FFCL, Amended FFCL.

had alleged sufficient facts to raise a plausible claim that defendants had actual, implied or constructive knowledge of plaintiffs' interest in the Property or the foreclosure reconveyance between plaintiffs and Solie. Id., p. 22. Plaintiffs distinguished Stella on two grounds. First, the property at issue in Stella was Torrens and here, the Property is abstract. Id., p. 23. The court in Stella emphasized the difference between the two and indicated that in the case of abstract property, a duty to inquire may be required. Id. (citing Stella, 2012 WL 3553123, at *6). Second, the anomalies in the closing documents discussed in Stella were different from the facts presented here, where the Property was in foreclosure and plaintiffs had entered into a repurchase agreement, both of which "would have likely been revealed" by the title commitment that SunTrust obtained in connection with its title insurance policy. Id., p. 24.

As to their quiet title claim, plaintiffs argued that they had no adequate remedy at law to determine the status of the Property. Id., p. 25. Moreover, the state court's award of fees to the plaintiffs against Solie did not determine their interest in the Property. Id. Plaintiffs also maintained that the unclean hands doctrine did not bar their quiet title action because their default was not at issue in the instant case. Id., p. 28.

Lastly, as to their declaratory judgment claim, plaintiffs argued that even if the claim was construed as a remedy and not a cause of action, defendants' motion to dismiss should be denied because plaintiffs stated substantive claims in Counts I and II. Id., pp. 28-29.

In reply, defendants again argued that plaintiffs could not state an independent claim against a mortgage lender under Minnesota Chapter 325N; rather, plaintiffs' only recourse was a lawsuit to quiet title. Reply in Support of Motion to Dismiss of

Defendants SunTrust Mortgage, Inc. and Federal National Mortgage Association, pp. 1-3 [Docket No. 20].

Additionally, defendants submitted that even if plaintiffs could assert a claim under Minnesota Chapter 325N, the allegations in the Amended Complaint regarding defendants' actual or constructive knowledge of the alleged improprieties by Solie in connection with sale of the Property failed to state a plausible claim for relief. Id., p. 3. For example, the fact that plaintiffs were in possession of the Property when Solie obtained financing from SunTrust or that they were facing foreclosure was not unusual. Id., p. 4. Similarly, plaintiffs' intent to remain in the Property beyond the closing was not uncommon and would not have alerted SunTrust that a prohibited Minnesota Chapter 325N transaction had taken place. Id. Likewise, plaintiffs' claim that a title insurance policy would have revealed a prohibited transaction was "absolutely unjustified" and would never have disclosed the existence and nature of a private contract between plaintiffs and Solie. Id., pp. 4-5. Also, plaintiffs' allegation that information on Solie's loan application would have disclosed his prohibited transaction, was unsupported by any facts alleged in the Amended Complaint. Id., p. 5. These facts, even taken as true, did not support a conclusion that SunTrust had actual or constructive knowledge that Solie had violated Minnesota Chapter 325N.

Addressing plaintiffs' quiet title argument, defendants again relied on the words "subject to" contained in the state court's amended order and insisted that plaintiffs' situation vis-à-vis SunTrust's mortgage was "simple" – plaintiffs own property subject to SunTrust's mortgage, which has been foreclosed due to Solie's default. Id., p. 6. In any event, because plaintiffs have been living in the Property since January, 2010, without

making payments and were awarded $44,499.48 against Solie, they "cannot seriously argue" that they were not provided an adequate remedy at law by the state court's orders. Id., pp. 6-7. Defendants also continued to argue that plaintiffs had unclean hands because it was their default on their mortgage with Interbank that set off the chain of events culminating in the instant lawsuit. Id., pp. 7-8.

Defendants distinguished Graves on the ground that in Graves, the plaintiff attempted to timely cancel the underlying transaction in accordance with Minn. Stat. § 325N.13. Id., p. 8. Defendants rejected plaintiffs' argument that their complaint in the prior lawsuit constituted a "cancellation" under the statute, since it obviously was not commenced within the timeframes set forth in Minn. Stat. § 325N.13. Id., p. 9. Further, even assuming the commencement of the state action or decision of cancellation could be construed as a notice of cancellation, neither of those dates fell within the cancellation period described by Minn. Stat. § 325N.13. Id. Based on this distinction between the facts in Graves and the facts regarding plaintiffs' alleged "cancellation," defendants contended that there was no basis under Graves to argue that SunTrust's mortgage was void. Id., pp. 9-10.

## II. LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly

plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>, at 679.

Motions to dismiss pursuant to Rule 12(b)(6) are generally without prejudice, "where there is no evidence of persistent pleading failures." <u>Holmseth v. City of East Grand Forks</u>, Civ. No. 14-2970 (DWF/LIB), 2015 WL 4488424, at *20 (D. Minn. July 23, 2015) (explaining the split in practice among Federal courts about whether a Rule 12(b)(6) dismissal is normally without or without prejudice and noting that the Eighth

Circuit generally favors dismissals under Rule 12(b)(6) without prejudice, and gathering cases.)

For the reasons described below, the Court concludes that defendants' Motion to Dismiss should be granted in part and denied in part. Plaintiffs should be allowed to amend their Amended Complaint to assert a quiet title claim consistent with this Report and Recommendation.

## III.    DISCUSSION

### A.    Count I – Defendants' Violation of Minnesota Chapter 325N.

Minnesota Chapter 325N is a consumer protection statute governing foreclosure reconveyances between a foreclosed homeowner and foreclosure purchasers. Erickson, 2012 WL 1593204, at *2 (D. Minn. Apr. 19, 2012) (describing Minnesota Chapter 325N); Jones, 514 F. Supp. 2d at 1147. As the Minnesota Supreme Court explained:

> The Legislature enacted MHOEPA[16] in 2004 to regulate foreclosure reconveyances, Act of May 28, 2004, ch. 263, §§ 1–18, 2004 Minn. Laws. 953, 953–67 (codified at Minn.Stat. §§ 325N.01–.18), which are transactions that target homeowners whose homes are in foreclosure. In general, such transactions, sometimes called "foreclosure rescue scams," target homeowners who are in financial distress and have substantial equity in their homes. See Proctor v. Metro. Money Store Corp., 645 F. Supp. 2d 464, 471 (D. Md. 2009). The foreclosure purchaser obtains title from the homeowner, pays off the balance owed on the mortgage, and then agrees to allow the homeowner to remain in the

---

[16]     The Minnesota Supreme Court in Graves noted that it would refer to Minnesota Chapter 325N as the "Minnesota Home Ownership and Equity Protection Act" or "MHOEPA" based on the parties' use of that acronym and its apparent similarity to the formal name of a similar federal law, the Home Ownership and Equity Protection Act. 859 N.W.2d at 794 n.1. Minnesota Chapter 325N itself is not named "MHOEPA" Id. In fact, the Court stated that the statute "does not appear to have a formal name." Id.

home through a leaseback arrangement or a contract for deed. See Johnson v. Wheeler, 492 F. Supp. 2d 492, 495–96 (D. Md. 2007). When the homeowner fails to make the payments—usually because the terms of the arrangement are unreasonable—the purchaser is able to evict the homeowner and keep the equity that the homeowner had in the home prior to the transaction. See Brown v. Grant Holding, LLC, 394 F.Supp.2d 1090, 1094–95 (D. Minn. 2005).

Graves, 859 N.W.2d at 797. The statute dictates who is a foreclosure purchaser, (Minn. Stat. § 325N.10, Subd. 4),[17] the format and content of reconveyance contracts, (Minn. Stat. §§ 325N.11 - .12),[18] describes when and how a foreclosed homeowner can cancel

---

[17]     Minn. Stat. § 325N.10, Subd. 4 defines a "foreclosure purchaser" as:

> a person that has acted as the acquirer in a foreclosure reconveyance. Foreclosure purchaser also includes a person that has acted in joint venture or joint enterprise with one or more acquirers in a foreclosure reconveyance. A foreclosure purchaser does not include: (i) a natural person who shows that the natural person is not in the business of foreclosure purchasing and has a prior personal relationship with the foreclosed homeowner, or (ii) a federal or state chartered bank, savings bank, thrift, or credit union.

[18]     Minn. Stat. § 325N.11 provides:

> A foreclosure purchaser shall enter into every foreclosure reconveyance in the form of a written contract. Every contract . . . must be fully completed and signed and dated by the foreclosed homeowner and foreclosure purchaser before the execution of any instrument of conveyance of the residence in foreclosure.

Bearing on the state court's findings that "[n]o single document contained the entire agreement between Plaintiffs and Defendant, which is a violation of Minn. Stat. § 325N.12," (Findings of Fact, ¶ 7), Minn. Stat. § 325N.12 provides in relevant part:

> Every contract required by section 325N.11 must contain the entire agreement of the parties and must include the following terms:
> ***

a contract with a foreclosure purchaser, (Minn. Stat. § 325N.13), and describes the actions a foreclosure purchaser is prohibited from doing, (Minn. Stat. § 325N.17(a)-(e)),[19] including those actions the foreclosure purchaser may not take during the cancellation period. Minn. Stat. § 325N.17(f)(1)-(4).[20]

---

(6) a complete description of the terms of any related agreement designed to allow the foreclosed homeowner to remain in the home, such as a rental agreement, repurchase agreement, contract for deed, or lease with option to buy;

\*\*\*

[19] For example, relevant to the state court's findings that "Defendant failed to establish that he had obtained any documentation (including a statement of assets, liabilities, and income) from Plaintiffs that could be used to demonstrate their reasonable ability to pay under the lease agreement and repurchase of the Property," (Conclusion of Law, ¶ 10), Minn. Stat. § 325N.17(a), states in part:

A foreclosure purchaser shall not:

(a) enter into, or attempt to enter into, a foreclosure reconveyance with a foreclosed homeowner unless:

(1) the foreclosure purchaser verifies and can demonstrate that the foreclosed homeowner has a reasonable ability to pay for the subsequent conveyance of an interest back to the foreclosed homeowner. In the case of a lease with an option to purchase, payment ability also includes the reasonable ability to make the lease payments and purchase the property within the term of the option to purchase. . . . There is a rebuttable presumption that the foreclosure purchaser has not verified reasonable payment ability if the foreclosure purchaser has not obtained documents other than a statement by the foreclosed homeowner of assets, liabilities, and income;

\*\*\*

[20] Minn. Stat. § 325N.17(f) prohibits a foreclosure purchaser from doing "any of the following until the time during which the foreclosed homeowner may cancel the transaction has fully elapsed:"

The statute provides the following remedies:

> Subd. 1. Remedies. A violation of sections 325N.10 to 325N.17 is considered to be a violation of section 325F.69, and all the remedies of section 8.31[21] are available for such an action. A private right of action under section 8.31 by a foreclosed homeowner is in the public interest.
>
> ***
>
> Subd. 3. Remedies cumulative. The remedies provided in this section are cumulative and do not restrict any remedy that is otherwise available. The provisions of sections 325N.10 to 325N.18 are not exclusive and are in addition to any other requirements, rights, remedies, and penalties provided by law. No action under this section shall affect the rights in the foreclosed property held by a good faith purchaser for value under sections 507.34, 508.48, 508A.48, or other applicable law.

> (1) accept from any foreclosed homeowner an execution of, or induce any foreclosed homeowner to execute, any instrument of conveyance of any interest in the residence in foreclosure;
>
> (2) record with the county recorder or file with the registrar of titles any document, including but not limited to, any instrument of conveyance, signed by the foreclosed homeowner;
>
> (3) transfer or encumber or purport to transfer or encumber any interest in the residence in foreclosure to any third party, provided no grant of any interest or encumbrance is defeated or affected as against a bona fide purchaser or encumbrance for value and without notice of a violation of sections 325N.10 to 325N.18, and knowledge on the part of any such person or entity that the property was "real property in foreclosure" does not constitute notice of a violation of sections 325N.10 to 325N.18. This section does not abrogate any duty of inquiry which exists as to rights or interests of persons in possession of the real property in foreclosure; or
>
> (4) pay the foreclosed homeowner any consideration.

[21] Minn. Stat. § 8.31 is Minnesota's Private Attorney General Statute.

***

Minn. Stat. § 325N.18, Subd. 1, 3.

Count I alleged that defendants violated Minnesota Chapter 325N, but neither SunTrust nor Fannie Mae are the foreclosure purchasers of plaintiffs' Property. See Minn. Stat. § 325N.10, Subd. 4, quoted at n. 17, supra. At the motion hearing, plaintiffs' counsel conceded that the statute may not provide a "direct cause of action under a specific statutory section under §325N" and that "perhaps" there was not a standalone cause of action under Minnesota Chapter 325N.[22] Nevertheless, in support of Count I, he maintained that the Graves court addressed "cause and effect" of a cancellation under this statute when it stated:

> Although the bona-fide-purchaser doctrine provides substantial protections against adverse claims when there is no record notice of a prior inconsistent interest, a bona fide purchaser cannot acquire an interest in property when the grantor's underlying deed is void.

Graves, 859 N.W.2d at 801. Counsel also pointed to language from the court's syllabus in Graves, in which the court stated:

> [b]ecause a deed that has been rendered void by a timely cancellation notice under Minn. Stat. § 325N.13 does not transfer title, a mortgagee does not take any interest based on such a deed, even if the mortgagee can establish that it was a bona fide purchaser.

Id. at 793.

This Court does not find the language cited by plaintiffs' counsel relevant to the question of whether plaintiffs could assert an independent claim against defendants

---

[22] To date, the hearing on defendants' motion has not been transcribed by the court reporter. However, as the Court also recorded the hearing electronically, it has the ability to review and quote or summarize remarks from the hearing.

under Minnesota Chapter 325N. For starters, the Court observes that <u>Graves</u> did not address whether there is a standalone cause of action under Minnesota Chapter 325N by a foreclosed homeowner against a lender. More to the point, the language from <u>Graves</u> cited by plaintiffs' counsel is relevant to plaintiffs' quiet title claim, but it does not establish a standalone cause of action against lenders under Minnesota Chapter 325N. Under these circumstances, the Court will not read such a cause of action into the statute. <u>See</u> <u>Graphic Communications Local 1B Health & Welfare Fund A v. CVS Caremark</u>, 850 N.W.2d 682, 691 (Minn. 2014) (stating that the court will not read a cause of action into a statute that the Legislature did not provide) (citing <u>Krueger v. Zeman Const. Co.</u>, 781 N.W.2d 858, 864 (Minn. 2010) ("[the court] cannot read into the statute any additional rights."); <u>Premier Bank v. Becker Dev., LLC</u>, 785 N.W.2d 753, 760 (Minn. 2010) ("If the legislature fails to address a particular topic, our rules of construction 'forbid adding words or meaning to a statute' that are purposely omitted or inadvertently overlooked." (quoting <u>Genin v. 1996 Mercury Marquis</u>, 622 N.W.2d 114, 117 (Minn. 2001)).

As a result, the Court finds that plaintiffs' claims in Count I, which are premised solely on violations of Minnesota Chapter 325N, should be dismissed.

**B.    <u>Count II – Quiet Title</u>**

As a preliminary matter, the Court will not dismiss plaintiffs' quiet title claim on the basis of the doctrine of unclean hands, or because plaintiffs received a remedy at law, as argued by defendants. Defs.' Mem., pp. 10-12.

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien

thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01. A quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands. Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12–565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013). The doctrine of unclean hands "is premised on withholding judicial assistance from a party guilty of unconscionable conduct." Fred O. Watson Co. v. United States Life Ins. Co. in City of New York, 258 N.W.2d 776, 778 (Minn. 1977).

Courts in this jurisdiction have held many times that plaintiffs seeking to have their mortgages declared invalid after defaulting on their loan, must come to court with unclean hands and will be barred from asserting quiet title on that basis. See e.g. Reff v. Bank of NY Mellon, Civ. No. 13-3415 (JNE/JSM), 2014 WL 4145407, at *9 (D. Minn. Aug. 20, 2014) (mortgagors who defaulted on their mortgage barred by doctrine of unclean hands from asserting unclean hands against foreclosing mortgagee); Ying Xiong V. Everbank, FSB, Civ. No. 13-2647 (DWF/JSM), 2014 WL 3513160, at *10 (D. Minn. July 15, 2014) (same); Guse v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-800 (PJS/JSM), 2014 WL 538631, at *11 (D. Minn. Feb. 11, 2014) (same); Yang Mee Thao–Xiong v. American Mortg. Co., Civ. No. 13-354 (MJD/TNL) 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (same), aff'd 575 Fed. Appx. 691 (8th Cir. 2014); Stilp v. HSBC Bank USA, NA, Civ. No. 12–3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013) ("Plaintiffs defaulted on their mortgage loan over four years ago. They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).

In each of these cases, however, the mortgagees (i.e. the homeowner borrowers) were seeking to quiet title against their mortgagors or, in the case of Guse, against Fannie Mae, which had acquired the property from the foreclosing mortgagor through a quitclaim deed – that is, against the party directly affected by their inequitable conduct. Here, there is no dispute that plaintiffs defaulted on the loan held by Interbank, but the mortgage that secured their loan is not at issue in the instant law suit. It was Solie, not the plaintiffs, who defaulted on the mortgage held by SunTrust and it was SunTrust, not Interbank, who foreclosed on the Property as a result of Solie's default. Interbank is not a party in this lawsuit and obviously has not claimed that plaintiffs acted inequitably toward it. Under these circumstances, the Court will not recommend dismissal of plaintiffs' quiet title claim on the basis of unclean hands.

The Court also rejects defendants' argument that plaintiffs' quiet title claim should be dismissed because they have an adequate remedy at law. Defs.' Mem., pp.10-11. According to defendants, plaintiffs exercised their remedy at law when they sued Solie in state court, obtained an order cancelling the purchase agreement, warranty deed, lease, and repurchase agreement, and obtained a judgment of $44,499.48 against Solie. Defs. Mem., p. 11.

"A party may not have equitable relief where there is an adequate remedy at law available." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 305 (Minn. 1996). Equitable relief is available only upon a showing that no adequate legal remedy exists. Allstate Sales & Leasing Co., Inc. v. Geis, 412 N.W.2d 30, 34 (Minn. Ct. App.1987).

The state court's award of fees and costs as damages to plaintiffs did not settle the question of defendants' interests in the Property. The award merely compensated plaintiffs in whole or in part for the fees and costs they expended in pursuing Solie. Similarly, cancelling the purchase agreement, warranty deed, lease and repurchase agreement did not settle the question of defendants' interests in the Property via the mortgage. Indeed, the state court explicitly stated that it was not purporting to "cancel, affect, or otherwise purport or attempt to affect the mortgage of SunTrust . . . and/or Fannie Mae," and that "[t]he status and disposition of the mortgage of SunTrust and/or Fannie Mae is not addressed in this Order." Amended FFCL, ¶¶ 3, 4. Considering the circumstances presented by this case – plaintiffs are in possession of a property in which defendants claim an interest and from which, in fact, Fannie Mae has attempted to evict plaintiffs -- the only remedy plaintiffs have is the equitable remedy of quiet title. For those reasons, the Court determines that plaintiffs have no adequate remedy at law and are entitled to seek the equitable remedy of quiet title.

The Court now turns the <u>Graves</u> decision and its impact on plaintiffs' quiet title count.

In <u>Graves</u>, the homeowner, Graves, defaulted on his mortgage with Wells Fargo. 859 N.W.2d at 793. Wells Fargo foreclosed on the home and bought it at the sheriff's sale on March 13, 2007. <u>Id.</u> During Graves' six-month redemption period, he was approached by Wayman, and on August 15, 2007, Graves signed a quitclaim deed transferring his home to REA Group, a company owned by Wayman; Wayman signed a purchase agreement on behalf of C & M, another company owned by Wayman in which C & M agreed to pay Graves $182,000; and Graves signed a residential lease and rent-

back agreement, which allowed Graves to buy back the house within six months.  Id. That same night, Graves changed his mind and signed and dated a cancellation form and sent it to Wayman the next day.  Id. at 793-94.  Wayman refused to honor the cancellation, and on September 5, 2007, Wayman recorded the quitclaim deed that Graves had given him at the August 15 meeting.  Id. at 794.  On September 11, 2007, two days before the expiration of the redemption period from the sheriff's sale in March, 2007, Wayman took steps to redeem the property.  Id.  C & M borrowed $145,000 from First Minnesota Bank and purportedly granted a mortgage to First Minnesota on Graves' home to secure the loan.  Id.  Wayman faxed the quitclaim deed and the purchase agreement to First Minnesota on September 13, 2007, and the loan closed four days later.  Id.  Of the loan proceeds, roughly $110,000 went to redeem the property.  Id. Approximately $30,500 was supposed to go to Graves, but he never got that money, nor did he ever receive any part of the $182,000 that Wayman and C&M owed him under the purchase agreement.  Id.  Graves made lease payments to C & M through mid-2009.  Id.

At some point in 2008, Wayman and C & M defaulted on the loan from First Minnesota.  Id.  First Minnesota sued to foreclose its mortgage and the court entered an order of foreclosure.  Id.  First Minnesota bought the property at a sheriff's foreclosure sale in August, 2009, and the time period for Wayman to redeem the property expired in February, 2010.  Graves sued Wayman, his companies and First Minnesota in June, 2009.  Id.

The Minnesota Supreme Court characterized Grave's complaint as a "kitchen sink" complaint that boiled down to two principle theories.  Id.  First, Graves contended

that he did not lawfully sell his home to Wayman in August, 2007, and therefore, First Minnesota's mortgage was invalid. Id. This claim was based on Graves' contention that his August, 2007 transaction with Wayman was an "equitable mortgage" that should be declared void and that the transaction should be cancelled pursuant to Minn. Stat. § 325N.13. Id. at 795. Second, Graves claimed that even if he did lawfully sell the property to Wayman in 2007, he retained a "vendor's lien" on the property that was superior to First Minnesota's mortgage. Id. Graves' "vendor's lien" was based on his contention that he was owed money from the sale to Wayman and had not been paid. Id.

After a bench trial and a post-judgment motion, the trial court (1) determined with respect to the August 15, 2007, transaction that the contracts were void as Graves had exercised his right of cancellation; (2) determined the August 15, 2007, quitclaim deed did not convey any interest to REA and REA therefore, "had nothing to convey to C & M" when it granted a mortgage on the property to First Minnesota; (3) awarded damages to Graves but did not award him a vendor's lien; (4) held that First Minnesota was a bona fide mortgagee; and (5) because First Minnesota had purchased the property at the August, 2009 sheriff's sale and the redemption period had expired, First Minnesota owned the house "free and clear of any encumbrances of other parties." Id. at 796.

Graves appealed and the Minnesota Court of Appeals reversed, finding that Graves, not First Minnesota, held the property free and clear. Id. The appellate court concluded that First Minnesota was not a bona fide purchaser because it should have inquired further into the Graves and Wayman transactions where the documents in its

possession provided actual, if not, implied notice of Grave's competing interest in the property and violation of MHOEPA. Id. at 796-97; see also Graves v. Wayman, 816 N.W.2d 655, 665-69 (Minn. Ct. App., 2012).[23] Consequently, First Minnesota was not a bona fide purchaser. Id. at 797. Alternatively, the appellate court held that Graves had cancelled the transaction with Wayman, and as a result, C & M had no interest to convey to First Minnesota, whether or not First Minnesota was a bona fide purchaser. Id. First Bank appealed the decision of the Court of Appeals.

---

[23] Noting that First Bank had raised its bona fide purchaser status as defense, the Court of Appeals held that First Bank had the burden of proving its status as a bona fide purchaser. Graves v. Wayman, 816 N.W.2d at 664 (citing MidCountry Bank v. Krueger, 782 N.W.2d 238, 244 (Minn. 2010) (stating that those seeking to be bona fide purchasers have the burden of proving their good-faith-purchaser status); Miller v. Hennen, 438 N.W.2d 366, 369 (Minn. 1989) ("The burden is on the party resisting the prior unrecorded title to prove that he purchased or acquired such title in good faith."); Goette v. Howe, 232 Minn. 168, 174, 44 N.W.2d 734, 738 (1950) (noting that defendant has an "affirmative burden" of proof in establishing absence of notice); Errett v. Wheeler, 109 Minn. 157, 162–63, 123 N.W. 414, 415 (1909) (stating that burden rests on the asserting party throughout the trial and does not shift, even if the prima facie case is presented by the asserting party)). The appellate court then observed:

> The MHOEPA does not contain a definition of bona fide purchaser. A good-faith purchaser, i.e., bona fide purchaser, "is someone 'who gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others.'" MidCountry Bank, 782 N.W.2d at 244 (quoting Anderson v. Graham Inv. Co., 263 N.W.2d 382, 384 (Minn.1978)); see also Bergstrom v. Johnson, 111 Minn. 247, 250, 126 N.W. 899, 900 (1910) (noting the requirements for becoming a bona fide purchaser). A "purchaser with actual, implied, or constructive notice of the outstanding rights of others is not entitled to the protection of the Recording Act." MidCountry Bank, 782 N.W.2d at 244 (quotation omitted); see also Ritchie v. Jennings, 181 Minn. 458, 461, 233 N.W. 20, 21 (1930) (noting the requirements for becoming a bona fide purchaser).

Id.

The Minnesota Supreme Court began its analysis by observing that there was no dispute that the transaction between Graves and Wayman (and his companies) was a "foreclosure reconveyance," or that Wayman violated MHOEPA "in multiple ways." Id. at 797. Nevertheless,

> [t]he outcome of this case … does not turn on the MHOEPA violations. Rather, it turns on the legal effect of Graves's timely cancellation of the transaction—that is, whether, after Graves cancelled the transaction, First Minnesota could have obtained rights to the property as a bona fide purchaser without knowledge of the MHOEPA violations. Based on the statutory scheme, we conclude that Graves's timely cancellation left Wayman and his corporate entities with no interest to convey and that, therefore, First Minnesota did not obtain any rights in the property as a bona fide purchaser under MHOEPA.

Id. at 797-98.

The court further observed that it assumed for the purposes of its analysis, without deciding, that First Minnesota was a bona fide purchaser, but this status did not change its conclusion that it took no interest in the property. Id. at 798 n.3. In reaching this result, the court stated that under MHOEPA,

> [A] foreclosed homeowner has the right to cancel any contract with a foreclosure purchaser until the earlier of (1) midnight of the fifth business day after signing a contract that complies with MHOEPA, or (2) the end of the foreclosed homeowner's redemption period. Minn. Stat. § 325N.13(b).

Id. at 798 (citing Minn. Stat. § 325N.13f(a) (emphasis added).

The court found that although Graves physically delivered the quitclaim deed to Wayman, he did not deliver the deed in any legal sense, because he retained the power to revoke or reclaim the deed during the cancellation period under Minn. Stat. § 325N.13(a)-(b). Id. at 799-800 (citing Babbitt v. Bennett, 68 Minn. 260, 263, 71 N.W.

22, 22 (1897) ("delivery of a deed is complete only when the grantor has put it beyond his power to revoke or reclaim it."); White & St. Townsite Co. v. J. Neils Lumber Co., 100 Minn. 16, 22, 110 N.W. 371, 374 (1907) (an undelivered deed cannot transfer legal title, even to a bona fide purchaser, because lack of delivery renders the deed void)).

Further:

> Although the bona-fide-purchaser doctrine provides substantial protections against adverse claims when there is no record notice of a prior inconsistent interest, a bona fide purchaser cannot acquire an interest in property when the grantor's underlying deed is void. See generally Caryl A. Yzenbaard, Residential Real Estate Transactions § 6:25 n. 47 (2005) (explaining that a void deed represents "one of the 'hidden risks' of the recording system"). It is well established under Minnesota law that when a grantor has "no power" to convey land due to a void deed, the purchaser does not acquire title, and "it is immaterial whether [the purchaser] was a bona fide purchaser or not." White & St. Townsite Co., 100 Minn. at 22, 110 N.W. at 374; cf. Bausman v. Faue, 45 Minn. 412, 417, 48 N.W. 13, 15–16 (1891) ("[W]here a deed was stolen from the [owner], or its possession fraudulently got by the [grantor], . . . a bona fide purchaser [is] in no better condition than his grantor."). Accordingly, under longstanding principles of real estate law, First Minnesota could not gain any rights in the property from C & M, even as a bona fide purchaser, because C & M had nothing to convey to First Minnesota. Nothing plus nothing still equals nothing."

Id. at 801 (emphasis added).

In reaching its conclusion, the court considered First Minnesota's contention that Minn. Stat. § 325N.17(f)(3) granted additional rights beyond the rights provided by common law and Minnesota's Recording Act, because it referenced a foreclosure purchaser's "purported" transfers. Id. at 802. As the court explained:

> First Minnesota relies primarily on Minn. Stat. § 325N.17(f)(3), which prohibits a foreclosure purchaser during

the cancellation period from "transfer[ring] . . . or purport[ing] to transfer . . . any interest in the residence in foreclosure to any third party," but expressly provides that "no grant of any interest or encumbrance is defeated or affected as against a bona fide purchaser . . . for value and without notice of a violation of [MHOEPA]." Because this provision applies even when a foreclosure purchaser "purport[s] to transfer" an interest in property, id., First Minnesota argues that the protections afforded to bona fide purchasers under MHOEPA extend even to purported transfers.

Id.

The court rejected this argument because Minn. Stat. § 325N.17(f)(3) protects bona fide purchasers only with respect to transfers by foreclosure purchasers that take place during the cancellation period, but not to those transfers that occurred after the cancellation period had expired, as was the case with the transfer to First Minnesota. Id. Important to this Court's analysis of defendants' motion, the Minnesota Supreme Court noted that the trial court had concluded that the cancellation period never began to run because the parties never executed a contract that complied with MHOEPA – the same argument plaintiffs have made in the instant case. Id. at 803, n.6; Pls.' Opp. Mem., p. 19. The court stated:

> [E]ven if the district court was correct and the 5-day period never commenced, the cancellation period expired, at the latest, on September 13, 2007, which was the last day of Grave's redemption period . . . C & M purported to convey a mortgage to First Minnesota on September 17, which was 4 days after the last day of the redemption period. Therefore, the purported transfer from C & M to First Minnesota occurred after the cancellation period had expired.

859 N.W.2d at 803, n.6 (citations omitted).

The court also considered the effect of the bona fide purchaser provision set forth in Minn. Stat. § 325N.18, Subd. 3, which provides: "[n]o action under this section shall

affect the rights in the foreclosed property held by a good faith purchaser for value under section 507.34, 508.48, 508A.48, or other applicable law." <u>Id.</u> at 804. The court stated that this provision did not create any additional rights in favor of a third party whose claim of title rests on a void deed. <u>Id.</u>. The court concluded that "in short, because the deed underlying first Minnesota's mortgage was void, First Minnesota took no legal interest in the property based on its claimed status as a bona fide purchaser." <u>Id.</u> at 805.

Finally, the court determined that just because First Minnesota did not have a valid mortgage did not mean that the lower court should have awarded the property to Graves free and clear. <u>Id.</u> First Minnesota bought the property at the sheriff's sale and it argued that it would be unjust to award the property to Graves free and clear "in light of the fact that it was [First Minnesota's] funds that redeemed the Property from the prior foreclosure." <u>Id.</u> The court agreed, reversed the Court of Appeals' award of the property to Graves, and remanded the case back to the district court "for further proceedings to determine whether First Minnesota has an interest in the property based on equitable principles." <u>Id.</u> (citing <u>Knight v. Schwandt</u>, 67 Minn. 71, 74, 69 N.W.2d 626, 627 (1896) (stating that a party who had redeemed property from a sheriff's sale based on a void deed "was not a legal redemptioner," but that it "does not follow that his redemption is nugatory as to the purchaser at the mortgage sale, which accepted and retained his property.").

In sum, <u>Graves</u> stands for the following principles. First, a bona fide purchaser cannot obtain an interest in property if the underlying deed is void -- MHOEPA did not change this long-standing rule. Second, Minn. Stat. § 325N.17(f)(3), which provides

that "no grant of any interest or encumbrance is defeated or affected as against a bona fide purchaser . . for value and without notice of a violation of [MHOEPA]," applies only to transfers to the bona fide purchaser during the cancellation period; it does not apply to those transfers that occur after the cancellation period has expired. Third, in order for the cancellation periods set forth in Minn. Stat. § 325N.13(a) to commence (and run), the contract of conveyance must comply with MHOEPA. And fourth, even if a bona fide purchaser cannot obtain an interest in property if the underlying deed is void, the alleged bona fide purchaser may have an equitable interest in the property.

Applying the principles set forth in <u>Graves</u> to the motion to dismiss plaintiffs' quiet title claim, the Court finds that defendants have no rights as bona fide purchasers, but may have an equitable interest in the Property, which a quiet title action can determine.

First, plaintiffs alleged and the state court found that Solie never complied with the provisions of Minn. Stat. §§ 325N.12 and Minn. Stat. § 325N.17(a)(1). Conclusions of Law, ¶¶ 6-10. Thus, the 5-day time period to cancel the purchase agreement, as set forth in Minn. Stat. § 325N.13(a), was never triggered. Likewise, the second provision of Minn. Stat. § 325N.13(a) – allowing for cancellation "until 8:00 a.m. on the last day of the period <u>during which the foreclosed homeowner has a right of redemption</u> . . . ." – never came into play -- either because the six-month period of redemption had not yet commenced (assuming the foreclosure sale had not occurred by October 6, 2007, when plaintiffs entered signed the purchase agreement with Solie) or had not yet run (assuming the foreclosure sale did take place between September and October 6, 2007). Consequently, the purchase agreement and warranty deed conveying the Property to Solie was void, as Minn. Stat. § 325N.17(f) prohibits a foreclosure

repurchaser from accepting any instrument of conveyance from any foreclosed homeowner or recording the instrument of conveyance "until the time during which the foreclosed homeowner may cancel the transaction has fully elapsed."  Minn. Stat. § 325N.17(f)(1), (2).  Here, the cancellation period not only never elapsed, it never began.

In sum, pursuant to <u>Graves</u> and long-standing common law, Solie had no interest to convey to defendants and defendants took no interest in the Property through the void warranty deed.  Therefore, defendants cannot invoke the protections of Minn. Stat. § 325N.17(f)(3) as bona fide purchasers.

Second, like First Minnesota in <u>Graves</u>, SunTrust paid money to purchase the Property at the foreclosure sale and presumably Fannie Mae conveyed something to SunTrust for the assignment of the Property.  Consequently, defendants are entitled to argue the equities of their interests in the Property in a quiet title action.

The obvious purpose of the allegations pled on information and belief in the Amended Complaint regarding defendants' actual, constructive or implied notice of Solie's violations of Minnesota Chapter 325N[24] (Amended Complaint, ¶ 29), was to defeat the protection afforded to bona fide purchasers in Minn. Stat. § 325N.17(f)(3) (<u>i.e.</u> a bona fide purchaser would have to be without knowledge of a violation of §§ 325N.10

---

[24]    Pleading on information and belief is generally insufficient to survive a motion to dismiss for failure to state a claim.  <u>Rumble v. Fairview Health Servs.</u>, Civ. No. 14-2037 (SRN/FLN), 2015 WL 1197415, at *29 (D. Minn. Mar. 16, 2015) (citing <u>Kampschroer v. Anoka Cnty.</u>, Civ. No. 13–2512 (SRN/TNL), 2014 WL 5530590, at *14 (D. Minn. Nov. 3, 2014) (citing <u>Solis v. City of Fresno</u>, Civ. No. 1:11-00053, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012)); <u>see also</u> <u>BB Motor Sales, LLC v. General Motors, LLC</u>, Civ. No. 14-5093 (MJD/JJK), 2015 WL 4077593, at *7-8 (D. Minn. July 6, 2015) (dismissing claim supported by "conclusory allegations, based on information and belief" because the claim did not rise above a speculative level).

to 325N.18).[25]  At the motion hearing, plaintiffs' counsel argued that in light of <u>Graves</u>, which confirms that defendants were not bona fide purchasers, it "doesn't even matter" if defendants had knowledge of the Solie transactions.  At the same time, however, he indicated that through discovery he planned to seek documents contained in the lender's files that he believed would show that the defendants knew of the Solie transactions.  Plaintiffs presumably seek this discovery to address defendants' claim that they have an equitable interest in the Property.

<u>Graves</u> makes it clear that SunTrust did not take an interest in the Property because the underlying warranty deed is void, and the judgment of the state court cancelling the deed and returning ownership of the Property to plaintiffs is consistent with that result.  Amended FFCL, ¶¶ 1(b), 2.  Therefore, defendants' actual, constructive or implied knowledge of Solie's actions is irrelevant to the pleading of quiet title.  On the other hand, discovery of information relating to defendants' knowledge of the Solie transactions is appropriate, as that information may be relevant to the defendants' purported equitable interests in the Property.  Thus, plaintiffs will not be precluded from pursuing discovery on these topics to address defendants' equitable claims to the Property.  However, when the Amended Complaint is repled, the allegations in ¶ 29 should be eliminated as they have no bearing on the affirmative elements of plaintiffs' quiet title claim.

Plaintiffs are also directed to eliminate ¶¶ 64-66 from their quiet title claim (and revise their Prayer for Relief, accordingly).  These paragraphs are both unclear and

---

[25]    As it is defendants' burden to establish they were bona fide purchasers, (<u>see</u> n. 23 <u>supra</u>), the Court wonders whether plaintiffs had any obligation to allege in their Amended Complaint facts to defeat this defense.  As plaintiffs did not make this argument to the Court, it will not address it here.

legally unsupported. For example, plaintiffs sought a determination that the SunTrust foreclosure was "stayed" or that SunTrust's foreclosure was improper in some undefined way and that another foreclosure by advertisement should be ordered to take place. Amended Complaint, ¶¶ 64, 65, Prayer for Relief, ¶¶ 1, 2. Foreclosure by advertisement is strictly a creature of statute. See Beecroft v. Deutsche Bank Nat'l Trust Co., 798 N.W.2d 78, 82 (Minn. Ct. App. 2011). It is doubtful that such relief is even possible because it appears to be seeking some form of equitable foreclosure by advertisement. On repleading, plaintiffs are directed to limit their requested relief to a determination of the parties' respective interests in the Property, and to an award of the Property to plaintiffs free and clear of defendants' mortgage and any equitable interest in the Property.

In sum, the Court recommends that plaintiffs be allowed to replead Count II to assert quiet title against defendants based on the principles articulated in Graves.

### C.   Count III – Declaratory Judgment

Count III alleged claims under the Minnesota Uniform Declaratory Judgment Act, Minn. Stat. § 555.01, et. seq. Amended Complaint, ¶¶ 69-72. Declaratory judgment is a remedy, not a cause of action. See, e.g. Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007). For that reason, the Court recommends dismissal of this Count. Additionally, the relief plaintiffs seek though Count III, "a resol[ution] and determin[ation] of the interest held by Defendants SunTrust and/or Fannie Mae" is the essentially the same relief plaintiffs seek in Count II, quiet title. As a result, the declaratory judgment claim is redundant and should be dismissed. See Mille Lacs Band of Chippewa Indians v. Minnesota, 152 F.R.D. 580, 582 (D. Minn. 1993) ("A redundant

declaratory judgment claim is not a proper declaratory judgment claim and should be dismissed."); <u>Lancaster v. Northern States Power Co.</u>, Civ. No. 11-619 (DWF/FLN), 2011 WL 5444115, at *6 (D. Minn. Nov. 9, 2011) (dismissing a claim for declaratory judgment as redundant because it would not provide additional relief beyond that sought through other claims).

### D.   <u>Failure to Distinguish Between Defendants</u>

The Amended Complaint lumped SunTrust and Fannie Mae together as "defendants" and failed to distinguish between them.  For example, plaintiffs refer to "defendants" providing financing to Solie for a mortgage on the Property, (Amended Complaint, ¶ 29); "defendants" were not bona fide purchasers "by virtue of <u>their</u> financing of Mr. Solie's purchase of the Property from Plaintiffs," (<u>Id.</u>, ¶ 59) (emphasis added); and "defendants' lien interest" was foreclosed by SunTrust.  <u>Id.</u>, ¶ 64.  At the same time, the Amended Complaint stated that Fannie Mae acquired an interest in the Property <u>after</u> it was assigned the Sheriff's Certificate of Sale.  <u>Id.</u>, ¶ 22.  The Amended Complaint does not describe how Fannie Mae provided financing to Solie, or how it had a lien interest that was foreclosed by SunTrust, and the Court suspects Fannie Mae provided no financing nor had a lien interest that was foreclosed by SunTrust.

As this Court has previously stated, "[t]his type of 'kitchen-sink' or 'shotgun' pleading does not pass Rule 8 muster because it does not provide the defendants "with fair notice of the nature and basis or grounds for a claim."  <u>Richards v. Dayton</u>, Civ. No. 13-3029 (JRT/JSM), 2015 WL 1522199, at *12 (D. Minn. Jan. 30, 2015), Report and Recommendation adopted by 2015 WL 1522237 (D. Minn. Mar. 30, 2015)).  Any amended pleading by plaintiffs must distinguish between SunTrust and Fannie Mae.

## IV.  RECOMMENDATION

For the reasons set forth above, it is recommended that defendants' Motion to Dismiss [Docket No. 11] be **GRANTED** in part and **DENIED** in part and that plaintiffs be allowed to serve and file a Second Amended Complaint consistent with this Report and Recommendation.


Dated: August 18, 2015                                    *Janie S. Mayeron*
                                                         JANIE S. MAYERON
                                                         United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 1, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.